**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **KENDRICK ARNEZ MOORE,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )   **Case No. 13-CV-0234-JED-TLW** |
| | ) |
| **JOE M. ALLBAUGH, Interim Director,[1]** | ) |
| | ) |
| **Respondent.** | ) |

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Doc. 1), filed by Petitioner

Kendrick Moore, a state prisoner appearing *pro se*. Respondent filed a response (Doc. 8) and

provided the state court records (Docs. 8, 9, 10, 11) necessary for adjudication of Petitioner's claims.

Petitioner did not file a reply to the response. For the reasons discussed below, the petition for writ

of habeas corpus shall be denied.

### *BACKGROUND*

On November 23, 2008, Officer Matt Arnold observed a silver pickup truck pull out of the

south entrance of a night club parking lot located near the intersection of 71st Street and Lewis

Avenue in Tulsa, Oklahoma (Doc. 10-4, Tr. Vol. II at 270-71). The truck drove northbound in the

southbound lanes of Lewis Avenue for approximately 50 feet before turning into the north entrance

of the night club's parking lot (*id.* at 271). Once parked, the driver of the truck exited the vehicle

(*id.* at 272).

---

[1] Petitioner is in custody at Davis Correctional Facility, a private prison located in
Holdenville, Oklahoma. Pursuant to Rule 2(a), *Rules Governing Habeas Corpus Cases*, the proper
party respondent in this matter is Joe M. Allbaugh, Interim Director of the Oklahoma Department
of Corrections. Therefore, Joe M. Allbaugh, Interim Director, is substituted in place of Tim
Wilkerson, Warden, as party respondent. The Clerk of Court shall note the substitution on the
record.

After observing the pickup truck driving against traffic, Officer Arnold activated his patrol car's red and blue lights and pulled in behind the pickup (*id.* at 271-72).  Officer Arnold testified that he saw the driver "standing right underneath a bright amber light" approximately ten feet in front of him (*id.* at 272-73).  According to Officer Arnold, the driver "was standing up and he looked straight at me and I looked right back at him and we made eye contact.  I'll never forget that face" (*id.* at 273).  At trial, Officer Arnold identified Petitioner as the driver of the truck (*id.*).[2]

Upon seeing Officer Arnold behind him, Petitioner reentered the vehicle, pulled out of the parking lot onto Lewis Avenue, and began driving toward 71st Street (*id.* at 273-74).  Officer Arnold turned his patrol car's siren on and pursued the vehicle (*id.* at 274-75).  Officer Arnold testified that the pickup truck "accelerated to about 80, 90 miles per hour and ran the red light at 71st Street, requiring motorists to take evasive action not to hit him" (*id.* at 276).

The truck maintained a high rate of speed as it traveled south on Lewis Avenue from 71st Street to 81st Street (*id.*).  As Petitioner and Officer Arnold crossed 81st Street, a second officer – Officer David Hale – joined the pursuit (*id.* at 277).  Petitioner exited Lewis Avenue onto 87th Street and drove into an apartment complex (*id.* at 279).  Officer Arnold testified that Petitioner then turned off his headlights and threw a "yellow cardboard box which [Officer Arnold] recognized as a box that ziplock baggies are routinely marketed in" and "a clear plastic baggie with a green substance" in it out of the driver's side window (*id.* at 279, 280).

---

[2]Although Officer Arnold identified Petitioner at trial as the driver of the truck, the description of the driver Officer Arnold put out over the police radio during the event contained one significant discrepancy (Doc. 10-4, Tr. Vol. II at 288-89).  Officer Arnold described the driver as being six foot one while Petitioner was actually six foot seven (*id.* at 288-89, 311).

After throwing the items out the driver's side window, Petitioner opened the driver's side door and continued to drive through the apartment complex before "he hit a curb and . . . drove up into a hill" (*id.* at 281). Officer Arnold "drove [his] police car into the open doorway in an attempt to keep [Petitioner] from exiting the truck," but the "truck was higher than [the patrol] car and [Petitioner] was able to jump out onto the hood of [the patrol] car and continued running" (*id.* at 282). Officers Arnold and Hale then pursued the suspect through the complex on foot (*id.* at 283). Officer Arnold testified that Petitioner "turn[ed] the corner behind the clubhouse and it was at that point where I heard a gunshot" (*id.* at 284). Officers Arnold and Hale were not hit (*id.* at 289). After hearing the gunshot, Officers Arnold and Hale held their position and waited for a K9 officer to arrive and begin tracking Petitioner (*id.* at 285). The K9 officer, Ryan Woods, and his partner, Cal, tracked Petitioner through the apartment complex. While they "came across some baggies that appeared to have some kind of drug in them" (Doc. 10-5, Tr. Vol. III at 384-85), Officer Woods and Cal were unable to locate Petitioner (id. at 385-86), and Petitioner was not apprehended that night (*id.* at 386, 480).

About "a week or so after this" incident, Petitioner "turned himself in" to the Oklahoma Highway Patrol. *See* Doc. 10-6, Tr. Vol. IV at 730. Petitioner faced the following charges, filed in Tulsa County District Court, Case No. CF-2008-5782: Trafficking in Illegal Drugs (Count 1); Unlawful Possession of Controlled Drug (Count 2); Possession of a Firearm After Former Conviction of a Felony (Count 3); Eluding a Police Officer (Count 4); Shooting with Intent to Kill (Count 5); Possession of a Firearm while in the Commission of a Felony (Count 6); Failure to Affix Drug Tax Stamp (Count 7); and Failure to Affix Drug Tax Stamp (Count 8) in Tulsa County District Court, Case No. CF-2008-5782 (*see* Doc. 8-1 at 1). The record reflects that, at the conclusion of a

two-stage trial, a jury convicted Petitioner of Counts 1, 3-6, and 8 (Doc. 8-3 at 1),[3] and the jury recommended the following sentences: twenty (20) years imprisonment on Count 1; five (5) years imprisonment on Count 3; three (3) years imprisonment on Count 4; twenty-five (25) years imprisonment on Count 5; four (4) years imprisonment on Count 6; and one (1) year imprisonment on Count 8 (*id.* at 1-2).[4]   The trial judge sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to run consecutively (*id.* at 2; Doc. 10-8, Sent. Hr'g at 4).   Attorneys Jessica Battson and Gregg Graves represented Petitioner at trial (Doc. 8-3 at 5).

Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA) (Doc. 8-1).   Represented by attorney Richard Couch, Petitioner raised four (4) propositions of error, as follows:

> Proposition 1:   The trial court erred in giving jury instruction no. 22, which did not fairly reflect the applicable law for the crime for which Appellant was charged in Count 8, possession of controlled dangerous substance without tax stamp affixed.
>
> Proposition 2:   Prosecutorial misconduct during *voir dire*, first stage closing argument, and the second stage of the jury trial deprived Appellant of a fair trial.
>
> Proposition 3:   The trial court erred in permitting the prosecution to introduce evidence that Appellant had received probation on a prior conviction alleged in the second stage of trial.

---

[3] Petitioner's trial was bifurcated because he chose not to testify and because the existence of a prior felony conviction was an element of Count 3 and was used to enhance the sentence on Count 1. In Stage 1, the jury found Petitioner guilty of Counts 1, 4, 5, 6, and 8. In Stage 2, the jury found Petitioner guilty of Count 3 and guilty of "Trafficking in Illegal Drugs after One (1) Previous Conviction" and fixed punishment on all counts. Counts 2 and 7 were dismissed at the beginning of trial. *See* Doc. 8-1 at 2-3.

[4] Shooting with Intent to Kill is an "eighty-five percent" crime under Oklahoma law, meaning Petitioner must serve not less than eighty-five percent of the twenty-five year sentence prior to becoming eligible to earn sentence credits or for parole. Okla. Stat. tit. 21, § 13.1(5).

Proposition 4:  The Appellant was deprived of effective assistance of counsel.

(*Id.*).  In an unpublished summary opinion, entered May 2, 2012, in Case No. F-2011-126, the

OCCA affirmed the trial court's judgments and sentences (Doc. 8-3).

On April 24, 2013, Petitioner filed his federal petition for a writ of habeas corpus (Doc. 1).

In his petition, Petitioner identifies four (4) grounds of error,[5] as follows:

Ground 1:  Trial court erred in giving jury instruction # 22 – false reflection of law governing the crime.

Ground 2:  Prosecutorial misconduct – first stage closing argument – second stage jury trial.

Ground 3:  Trial court erred – permitting prosecutor to introduce evidence – prejudicial.

Ground 4:  The Appellant was deprived of effective assistance of counsel.

(*Id.*).  In response to the petition, Respondent argues that Petitioner is not entitled to habeas corpus

relief (Doc. 8).

## *ANALYSIS*

**A.  Petition for Writ of Habeas Corpus**

**1.  Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion

requirements of 28 U.S.C. § 2254(b), (c).  *See Rose v. Lundy*, 455 U.S. 509, 510 (1982).  Petitioner

---

[5] Petitioner identifies only Grounds 1-3 in the proper places on the Court's habeas corpus petition form.  However, Petitioner also attaches a copy of "Proposition Four" – that "Appellant was deprived of effective assistance of counsel" – from his direct appeal brief (*see* Doc. 1 at 18). Therefore, the Court will analyze all four (4) grounds.

presented his claims to the OCCA on direct appeal.  Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.[6]

### 2.      Claims Adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011); *Williams v. Taylor*, 529 U.S. 362, 386 (2000); *Neill v. Gibson*, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions."  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. *See Bell v. Cone*, 535 U.S. 685, 699 (2002); *Hooper v. Mullin*, 314 F.3d 1162, 1169 (10th Cir. 2002).  An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice."  *White*, 134 S. Ct. at 1702 (citation omitted).  The petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and

_____

[6] In his federal petition for writ of habeas corpus, Petitioner did not request an evidentiary hearing, and, under the facts of the case, he would not be entitled to one.  *See Williams v. Taylor*, 529 U.S. 420 (2000).

comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (citation and internal quotation marks omitted); *see Metrish v. Lancaster*, 133 S. Ct. 1781, 1787 (2013).

Generally, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state law questions). When conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id.* at 68 (citations omitted).

### a.   Ground 1: Jury Instruction Error

As his first ground of error, Petitioner alleges that the "[t]rial court erred in giving jury instruction # 22" because it was a "false reflection of [the] law governing the crime" of Failure to Affix a Tax Stamp (Doc. 1 at 4). Petitioner also argues that he was prejudiced by the inclusion of "a dealer" as an element because it allowed the prosecutor to introduce otherwise irrelevant evidence that Petitioner was a drug dealer (*id.* at 8). At trial, the judge instructed the jury that the elements of Failure to Affix a Tax Stamp were "First, a dealer; Second, who distributes or possesses; Third, the controlled dangerous substance of cocaine base; Fourth, in excess of 7 grams without affixing the appropriate tax stamp" (Doc. 10-9, O.R. Vol. I at 154, Instruction No. 22). The instructions did not include a definition of the term "dealer." During deliberations, the jury asked for the definition of the word "dealer," and the judge gave a supplemental instruction, defining "a dealer" as "someone who violates the Uniform Controlled Substances Act by possessing seven or more grams of a controlled dangerous substance" (Doc. 10-7, Tr. Vol. V at 854).

On direct appeal, the OCCA reviewed Petitioner's claim that Instruction No. 22 was improper under a plain error standard because Petitioner's trial counsel did not object to the instruction (Doc. 8-3 at 2). The OCCA held that there was no plain error, as the wording of Instruction No. 22 was substantially the same as the statutory language (*id.* at 2). Also, the OCCA concluded that Petitioner's counsel did "preserve[] an objection to the district court's supplemental instruction defining 'dealer,'" and held that there was "no error as the language was substantially identical to the relevant statute" (*id.* at 3 (citation omitted)).

In general, matters concerning jury instructions are considered questions of state law and are not proper subjects of federal habeas corpus review under 28 U.S.C. § 2254. *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005); *see Rose v. Hodges*, 423 U.S. 19, 22 (1975) (stating federal habeas relief is not permitted for state law errors). It is well established that "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (internal quotation marks and citation omitted); *see Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) ("A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." (citation omitted)).

To determine whether Petitioner was deprived of a fundamentally fair trial and due process of law, the Court must consider the challenged jury instructions "in the context of the instructions as a whole and the trial record" and ask if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (internal quotation marks and citations omitted). "An omission, or an incomplete instruction, is less likely to be prejudicial

8

than a misstatement of the law."  *Maes*, 46 F.3d at 984 (internal quotation marks and citation omitted).  "In reviewing an ambiguous instruction . . . we inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."  *Estelle*, 502 U.S. at 72 (citation omitted).  The Court also considers that:

> [j]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might.  Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Boyde v. California*, 494 U.S. 370, 380-81 (1990).

Additionally, Oklahoma defines plain error as "an error which goes to the foundation of the case, or which takes from a defendant a right essential to his defense," *Simpson v. State*, 876 P.2d 690, 698 (Okla. Crim. App. 1994), and "impinges on the fundamental fairness of trial."  *Cleary v. State*, 942 P.2d 736, 753 (Okla. Crim. App. 1997).  Addressing Oklahoma's definition of plain error, the Tenth Circuit found that there was "no practical distinction between the formulations of plain error . . .  and the federal due-process test, which requires reversal when error so infused the trial with unfairness as to deny due process of law."  *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) (citation and internal quotation marks omitted).  Therefore, when the OCCA applies the plain error standard of review, this Court must defer to its ruling unless it "unreasonably appli[ed]" the test.  *Id.* (internal quotation marks omitted).

The Court cannot say that Instruction No. 22 or the supplemental instruction rendered Petitioner's trial fundamentally unfair.  Petitioner argues that the jury was confused by the inclusion of "a dealer" as an element of the crime and that the trial court's attempt to clarify what constitutes "a dealer" only exacerbated the jury's confusion. (Doc. 1 at 6-7).  Instruction No. 22 tracked the

language of the statute and correctly instructed the jury on the elements of Failure to Affix a Tax

Stamp (*see* Doc. 10-9, O.R. Vol. I at 154; Okla. Stat. tit. 68, § 450.1).  The supplemental instruction

also correctly instructed the jury on the definition of "a dealer" (*see* Doc. 10-11 at 38).  While the

first two elements of Instruction No. 22 may have been repetitive – the statutory definition of "a

dealer" (element one) in Okla. Stat. tit. 68, § 450.1 includes one "who distributes or possesses"

(element two) a certain quantity of drugs – they were not misleading or so confusing as to render

the trial fundamentally unfair.  Additionally, in light of the record as a whole – including the

substantial evidence of Petitioner's guilt[7] – the Court cannot find that Petitioner's trial was rendered

fundamentally unfair when the prosecution admitted evidence of drug dealing based on the inclusion

of "a dealer" as an element in Instruction No. 22.  Therefore, the OCCA's adjudication of this claim

was not contrary to, nor did it involve an unreasonable application of, clearly established federal law

as determined by the Supreme Court.  Habeas corpus relief is denied on Ground 1.

   **b.**   **Ground 2: Prosecutorial Misconduct**

---

[7] The substantial evidence of Petitioner's guilt includes the following items recovered during the investigation at the apartment complex: a box of empty ziptop baggies and "two individually wrapped bags of what appeared to be marijuana" on the road leading to the apartment complex (*id.* at 396); one baggie containing marijuana and one baggie containing cocaine base weighing 16.73 grams on a second-story walkway in the apartment complex (*id.* at 436, 532); one bag of cocaine base weighing 24.81 grams, one bag of cocaine base weighing 18.12 grams, a digital scale, a box of flip-top sandwich bags, and several one inch by one inch ziptop bags from the inside of the truck (Doc. 10-4, Tr. Vol. II at 332-34; Doc. 10-5, Tr. Vol. III at 532, 534); one spent cartridge in the area of the complex where the officers had been pursuing Petitioner (*id.* at 429-31); and a semi-automatic pistol with no magazine and one round in the chamber in the front yard of a nearby home (*id.* at 438, 442, 444).  Additionally, Officer Richard Urban testified that he saw a high school diploma and a birth certificate with Petitioner's name on them in the cab of the pickup truck (Doc. 10-4, Tr. Vol. II at 325-26), and Petitioner's girlfriend at the time, Valerie Bolden, testified that she rented the pickup truck for Petitioner and gave Petitioner the keys to the truck (*id.* at 367).

As his second ground of error, Petitioner alleges that the prosecutor committed misconduct by, first, enquiring about and commenting on what constitutes drug trafficking during *voir dire* (Doc. 1 at 11-12*)*; second, making arguments about the issue of identification errors during *voir dire* (*id.* at 12-13); third, telling the jury during closing arguments that "[i]t's your job, it's your duty to hold him responsible for his actions" (*id.* at 13-14 (citation omitted)); and, fourth, "fail[ing] to strike from the redacted Order Accepting Plea of Guilty, which was presented to the jury, all references to 'probation'" (*id.* at 14 (citations omitted)).  Additionally, Petitioner argues that the cumulative effect of the prosecutorial misconduct deprived him of a fundamentally fair trial (*id.* at 16).  On direct appeal, the OCCA "[found] no prejudicial error requiring reversal or modification" (Doc. 8-3 at 3).[8]

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-45 (1974); *Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998).  Inquiry into the fundamental fairness of a trial requires examination of the entire proceedings.  *Donnelly*, 416 U.S. at 643.  "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution."  *Fero v. Kerby*, 39

---

[8] While the OCCA's analysis of Proposition 2 did not explicitly address Petitioner's claim that the prosecutor committed misconduct by telling the jury during closing arguments that "[i]t's your job, it's your duty to hold [Petitioner] responsible for his actions," the OCCA did recognize that Petitioner alleged this in his direct appeal brief (Doc. 8-3 at 2), and the OCCA denied relief on all claims (*id.* at 5).  Nothing in 28 U.S.C. § 2254(d)(1) "require[es] a statement of reasons" by the state court, *Richter*, 562 U.S. at 98, and habeas courts can "determin[e] whether a state court's decision resulted from an unreasonable legal or factual conclusion . . . [without] an opinion from the state court explaining the state court's reasoning."  *Id.* (citations omitted).

F.3d 1462, 1474 (10th Cir. 1994) (internal quotation marks and citations omitted); *see Smallwood v. Gibson*, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

First, Petitioner alleges that, during *voir dire*, the prosecutor asked a juror whether there was "a difference between drug possession and drug trafficking," and then stated that the state law "almost presumes" that there is intent to sell if the defendant is in possession of drugs over a certain amount (Doc. 1 at 11-12). Petitioner argues that this was an inaccurate representation of state law and that this line of questioning "was the beginning of the prosecution's efforts to improperly present evidence of Appellant as a 'dealer' of drugs" (*id.* at 12 (citation omitted)). The Court cannot find that these comments rendered Petitioner's trial fundamentally unfair. The prosecutor read the charges against Petitioner to the jury, and the trial judge instructed the jury on the elements of those crimes (*see* Doc. 10-9, O.R. Vol. I at 129-31, 152, 154, 156-58, 160, 169-71). In a supplemental instruction, the trial judge properly defined "a dealer" as "a person who is in violation of the Uniform Controlled Dangerous Substances Act possesses seven (7) or more grams of any controlled dangerous substance other than marijuana" (Doc. 10-11 at 38). Additionally, as cited above in footnote six, the prosecution presented substantial evidence of Petitioner's guilt at trial. Therefore, the prosecutor's comments during *voir dire* did not render Petitioner's trial fundamentally unfair.

Second, Petitioner argues that "questions [asked] by the prosecutor regarding the juror's ability to describe himself and the other prosecutor had no relevance in determining these jurors' impartiality. These questions dealt specifically with the facts of this case and were improper" (Doc. 1 at 13 (citation omitted)). An anticipated trial issue concerned an inaccurate estimation of Petitioner's height given by one of the police officers. The trial transcript reflects that, during *voir*

12

*dire*, the prosecutor asked a potential juror "can police officers make mistakes?" *See* Doc. 10-4, Tr.

Vol. II at 171.  Then, the following exchange took place:

| | |
|---|---|
| [PROSECUTOR:] | Ms. Haynes, how tall am I?  Quick.  Quick. |
| JUROR HAYNES: | 5-9. |
| [PROSECUTOR:] | Pretty close.  5-10 and-a-half |
| JUROR HAYNES: | That was a pretty good guess. |
| [PROSECUTOR:] | That's pretty close.  Ms. Johnson, how tall is Mr. Evans, Tony here? |
| JUROR JOHNSON: | About 5-11. |
| [PROSECUTOR:] | Mr. Evans, how tall are you? |
| MR. EVANS: | 6-4. |

*Id.*  Defense counsel objected and moved for a mistrial.  *Id.*  The trial judge overruled the objection

"as to prejudice," but asked the prosecutor to "move on."  *Id.* at 172.

The Court cannot conclude that this exchange rendered Petitioner's trial fundamentally

unfair.  Contrary to Petitioner's allegations, the prosecutor did not reference any specific facts of the

case during the exchange.  Furthermore, during trial, the parties did in fact argue extensively about

the ramifications of the discrepancy between the police description of the suspect's height and

Petitioner's height (*see id.* at 266, 312, 316, 318, 343-45; Doc. 10-7, Tr. Vol. V at 814).  As a result,

the prosecutor's questioning during *voir dire* would not render the trial fundamentally unfair.

Third, Petitioner alleges that, during closing arguments, the prosecutor improperly told the

jury "[i]t's your job, it's your duty to hold him responsible for his actions" (Doc. 1 at 13-14 (citation

omitted)).  Because "the trial court had previously determined, over defense counsel's objection, that

the prosecutor's argument that [Petitioner] had not accepted responsibility for his actions was the

13

same as arguing that [Petitioner] had pled not guilty contesting his responsibility," Petitioner argues that the prosecutor's closing argument was the "same as arguing it's your job and duty to find [Petitioner] guilty"(*id.* at 14).  The prosecutor's comments during closing arguments must be taken in the context of his comments during *voir dire* where he asked the jury whether "anyone [has] a problem in holding an actual person as you're seated in front of him accountable? . . . [T]he State is going to have to prove to you beyond a reasonable doubt all the elements of the crime . . . . We have to prove to you that beyond a reasonable doubt.  That's our burden.  If we do that, can you hold someone accountable?" (Doc. 10-4, Tr. Vol. II at 182).  Additionally, in his closing argument, the prosecutor emphasized that the State had the burden of proving every element of the crime (Doc. 10-7, Tr. Vol. V at 778-79).   Hence, the prosecutor's comments did not render the trial fundamentally unfair.

Fourth, Petitioner argues that "the prosecutor committed misconduct during the second stage of the jury trial when he failed to strike from the redacted Order Accepting Plea of Guilty, which was presented to the jury, all references to 'probation'" (Doc. 1 at 14 (citations omitted)).  The document was presented in support of Count 3, Possession of a Firearm after Former Conviction of a Felony, to establish that Petitioner had previously been convicted of a felony (Doc. 10-7, Tr. Vol. V at 861).  In the document provided to the jury, the prosecutor redacted multiple references to probation and Petitioner's deferred sentence including two pages of "Rules and Conditions of Supervised Probation" and multiple references to probation in the body of the document (*see* Doc. 10-11 at 32).  The sole unredacted reference to probation or Petitioner's deferred sentence was near the bottom of the document and stated that  "[i]t is further ordered that upon violation, if any, of the conditions of probations as specified herein, the Court may enter a judgment of guilty and proceed

14

as provided in 22 O.S. Supp., 1970, Section 991a" (*id.* at 32).  While the prosecutor failed to redact

every reference to probation and Petitioner's deferred sentence, given the strength and nature of the

evidence against Petitioner and the fact that the jury's recommended sentences were well below the

statutory maximum for the crimes, the Court cannot find that the failure to redact the reference to

probation rendered Petitioner's trial and sentencing fundamentally unfair.

The Court also finds that, in light of the substantial evidence presented at trial showing

Petitioner's guilt, as summarized above in footnote six, and the nature of the prosecutorial

misconduct claims, the OCCA's determination that the cumulative effect of the alleged instances

of prosecutorial misconduct did not deprive Petitioner of a fundamentally fair trial was not

unreasonable.  Therefore, the Court cannot say that the OCCA's adjudication of Petitioner's claim

of prosecutorial misconduct was contrary to, or involved an unreasonable application of, clearly

established federal law as determined by the Supreme Court.  Habeas corpus relief is denied on

Ground 2.

c.    **Ground 3: Failure to Redact**

As his third ground of error, Petitioner alleges that "[t]he trial court erred when it permitted

the State to introduce into evidence State's Exhibit 49A, a redacted Order Accepting Plea of Guilty,

without verifying, prior to its being sent back with the jury, that the exhibit contained no references

to probation" (Doc. 1 at 17 (citations omitted)).  According to Petitioner, "[t]he prosecutor struck

the Rules and Conditions of Supervised Probation from the un-redacted Order, being pages two and

three, in preparing the redacted Order, but failed to strike from the body of the redacted Order the

language of paragraph six of the first page of the redacted Order which referred to the conditions

of probation" (*id.* (citations omitted)).  On direct appeal, the OCCA reviewed for plain error and

15

concluded that Petitioner "[had] not shown that the obscure reference to his previous suspended sentence in this exhibit resulted in an unfair or excessive sentence" (Doc. 8-3 at 3-4 (citation omitted)).

As stated above, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws. *See Estelle*, 502 U.S. at 67–68. Habeas relief is not available for a challenge to state court evidentiary rulings unless the rulings "rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks and citation omitted). A proceeding is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of justice." *United States v. Russell*, 411 U.S. 423, 432 (1973) (internal quotation marks and citation omitted). Additionally, as explained above in section A.2.a., the Court must defer to the OCCA's determination that there was no violation of due process unless the OCCA "unreasonably appli[ed]" the test. *Thornburg*, 422 F.3d at 1125 (internal quotation marks omitted).

Petitioner presents no evidence that the trial court's failure to verify that the prosecutor had removed every reference to probation from the Order Accepting Plea of Guilty rendered his trial fundamentally unfair. Petitioner's sentences were far below the maximum sentence allowed under state law, in spite of the inclusion of the single reference to probation. Petitioner makes no additional arguments supporting his claim that the single unredacted reference to probation deprived him of due process of law. Therefore, the Court cannot find that the OCCA's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Habeas corpus relief is denied on Ground 3.

### d.      Ground 4: Ineffective Assistance of Counsel

16

In Ground 4, Petitioner alleges, first, that "trial counsel for [Petitioner] failed to object to Instruction No. 22 as not fairly stating the applicable law for the crime of Possession of Controlled Dangerous Substance without Tax Stamp Affixed," and, second, that "trial counsel failed to verify that State's Exhibit 49A was properly redacted by the State, prior to its being sent back with the jury, so that the exhibit contained no references to probation" (Doc. 1 at 20).  On direct appeal, the OCCA concluded that, because Petitioner could not show "prejudicial error in either the instructions or the admission of evidence at trial, [Petitioner] cannot show that counsel's performance was objectively deficient or that he has suffered prejudice from counsel's allegedly deficient performance" (Doc. 8-3 at 4).

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of his claim was contrary to, or involved an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).  *See* 28 U.S.C. § 2254(d).  *Strickland* sets out a two-pronged standard for review of ineffective assistance of counsel claims.  A defendant must show that (1) his counsel's performance was deficient and that (2) the deficient performance was prejudicial.  *Strickland*, 466 U.S. at 687.

The first prong may be established by showing that counsel performed below the level expected from a reasonably competent attorney in a criminal case.  *Id.* at 687-88.  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689 (citation omitted).  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved

17

unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689 (citation omitted).

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Sallahdin v. Gibson*, 275 F.3d 1211, 1235 (10th Cir. 2002); *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999); *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (stating that a petitioner must show that counsel's errors rendered the results of the trial unreliable).  "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.  Review of a state court's decision on ineffective assistance of counsel claims is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (internal quotation marks and citation omitted) (noting that a habeas court must "take a highly deferential look at counsel's performance" under *Strickland* and "through the deferential lens of § 2254(d)" (internal quotation marks and citations omitted)).

As his first claim, Petitioner argues that his trial counsel was ineffective for failing to object to the inclusion of "a dealer" in Instruction No. 22 as the first element of Failure to Affix a Tax Stamp (Doc. 1 at 18-19).  As discussed above in section A.2.a., the Court cannot find that Petitioner was prejudiced either by Instruction No. 22 or by the admission of evidence intended to show that Petitioner was a drug dealer.  While the inclusion of the term "dealer" as an element of Failure to Affix a Tax Stamp may have been repetitive, Petitioner has not shown that, in light of the supplementary instruction, it was misleading or unduly confusing.  Additionally, in light of the

substantial evidence of Petitioner's guilt, the Court cannot say that the OCCA's determination that contrary to, or involved an unreasonable application of, *Strickland*.

As his second claim, Petitioner argues that his trial counsel was ineffective for failing to verify that all references to probation had been redacted from the Order Accepting Plea of Guilty (*id.* at 20).  As discussed above in sections A.2.b. and A.2.c., the Court cannot find that Petitioner was prejudiced by the inclusion of the single reference to probation.  Petitioner's sentences were well below the statutory maximum for each of his crimes, and Petitioner does not present any additional evidence that shows he suffered prejudice as a result of the unredacted reference to probation.

Therefore, the Court cannot say that the OCCA's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Habeas corpus relief is denied on Ground 4.

**B.      Certificate of Appealability**

Pursuant to Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Under 28 U.S.C. § 2253, the Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right" and the Court "indicate[s] which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, a court could resolve the issues differently, or the questions deserve further proceedings.   *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citation omitted).

19

After considering the record in this case, the Court concludes that a certificate of appealability should *not* issue.  Nothing suggests that this Court's application of AEDPA standards to the decision by the OCCA is debatable amongst jurists of reason.  *See Dockins v. Hines*, 374 F.3d 935, 937-38 (10th Cir. 2004).  The Court will deny a certificate of appealability.

### CONCLUSION

After careful review of the record, the Court concludes Petitioner has not established he is in custody in violation of the Constitution or laws of the United States.  Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that,

1.      The Clerk shall note on the record the substitution of Joe M. Allbaugh, Interim Director, in place of Tim Wilkerson, Warden, as party respondent.

2.      The petition for writ of habeas corpus (Doc. 1) is **denied**.

3.      A certificate of appealability is **denied**.

4.      A separate judgment shall be entered in this matter.

ORDERED THIS 2nd day of June, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE